## Roberts's Petition.

*Election laws—Residence of candidate—Nominating petition—"Material error"—Amendment—Act of July 12, 1913.*

1. "Material error," as the words are used in the 8th section of the Act of July 12, 1913, P. L. 719, means any material error. There is no restriction of the jurisdiction of the courts to such error as appears upon the face of the nominating petition.

2. A false or untrue statement as to the residence of the candidate is such an error, concerning which the Courts of Dauphin County have jurisdiction to inquire with reference to the petition for nominating a candidate for election to the legislature.

3. It is the purpose of the Act of 1913 to provide that persons clearly disqualified shall not be put upon the ballot; it is not the purpose of the legislature, in endeavoring to provide for valid elections, to set up a different procedure with reference to candidates for Congress and the legislature than obtains as to other offices.

4. Temporary residence in the City of Pittsburgh and payment of an occupation tax there is not sufficient to deprive a prospective candidate for the legislature of his qualification as a resident of another district, where he owned and maintained his home.

*Election laws—Nominating petition—Signatures—Sufficiency as to number—Filing of petitions.*

5. Where a candidate files three petitions for his nomination, and a fourth petition is subsequently filed in his behalf, the sufficiency as to number of signatures on the petitions is to be determined from the whole number of signatures on all four of the petitions. It is immaterial that the fourth petition was marked "Dup." and filed in a box or trunk in the office of the Secretary of the Commonwealth instead of having been placed with the other three petitions. In the face of positive evidence that the fourth petition was properly filed, the burden is upon the contestant to show the contrary.

*Election laws—Nominating petition—Candidate for State Senate—Unexpired term—Description of office.*

6. It is not necessary that a nominating petition shall set forth that the term for which the candidate for a vacancy in the State Senate seeks election is an unexpired term. The office to be filled is that of State Senator, and when he is elected the term is whatever the law provides.

Application to set aside nominating petition. C. P. Dauphin Co., March T., 1922, No. 243.

*John R. Geyer* and *W. J. Brennan*, for application.

*Beidleman & Hull* and *William T. Treadway*, contra.

HARGEST, P. J., April 22, 1922.—Objections have been made to the petitions filed with the Secretary of the Commonwealth to have the name of Edward G. Roberts put upon the official primary ballot as a candidate for the office of Senator in the General Assembly to represent the Republican Party in the Forty-fifth Senatorial District of Pennsylvania.

The grounds of these objections are: 1. That Edward G. Roberts was not an inhabitant of the Forty-fifth Senatorial District for one year next before

2 D. & C.

the election for which he is a candidate. 2. That his petitions do not contain the signatures of the requisite number of qualified electors. 3. That the petitions do not properly describe the office to be filled.

*Facts.*

We find the facts to be as follows: Edward G. Roberts purchased some years ago forty acres of land in Findlay Township, Allegheny County, in the Forty-fifth Senatorial District, upon which he built a stone dwelling, containing fourteen rooms and three bath-rooms, for his permanent residence, representing an investment of about $40,000. He occupied the property for several years. Then, because of the sickness of his wife and the subsequent sickness of a son, for the period of about eight months, and the desire to have his daughter, a student at Carnegie Technical School, located more conveniently to the school, he and his family have occupied an apartment in the City of Pittsburgh for the last two years. All of the furniture, including pictures and rugs in the said house, belong to him. During the first winter he kept two men there as caretakers, but the property was not properly cared for, and to prevent its being idle, it was subsequently rented to a family at a modest rental of $50 per month. Mr. Roberts and his family reside in said house occasionally over the week-ends and for short periods of time. He votes in the village of Imperial, in Findlay Township, and has voted there since he first occupied the house. He has been for several years past, and now is, the Republican County Committeeman from that district. He is, however, not assessed with an occupation tax in Findlay Township, but is assessed with such tax in the district in which he temporarily resides in Pittsburgh, but he paid his taxes without knowing that such occupation tax was assessed against him. He regards Findlay Township as his permanent residence and has no intention of changing therefrom. He filed in the office of the Secretary of the Commonwealth three petitions, containing 207 signatures, to have his name put upon the primary ballot as the Republican candidate for Senator from the Forty-fifth Senatorial District, about 6.30 o'clock on the evening of April 6, 1922, which petitions have been designated in this case as Nos. 1, 2 and 3. His brother filed for him, about 9.30 o'clock of the same evening, an additional petition, containing 112 signatures, designated in this case as No. 4. Both he and his brother received receipts for said petitions. The petition filed by him was examined and duly entered of record. The petition filed by his brother was marked "Dup.," indicating duplicate, and placed in a box or trunk in the office of the Secretary of the Commonwealth along with other petitions, for the purpose of being subsequently attached to the original. Several hundreds of such petitions were filed during the evening of the last day for filing.

*Discussion.*

1. Counsel for the contestee contends that this court has no jurisdiction to consider the objection based on the ground of residence.

Section 8 of the Act of July 12, 1913, P. L. 719, provides, in part, as follows: "No nomination petition shall be refused or set aside except for: (a) Material error or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits. . . . If the matters objected to are such as are specified in sub-division (a) of this section, the court, upon hearing the case, may, in its discretion, permit amendments within such time and upon such terms as to payment of costs as the said court may specify."

It is argued that, even if the contestee misstated his residence, it is not a

material error apparent on the face of the petition or affidavit, and that such question is reserved to the Senate to determine under section 9 of article II of the Constitution of Pennsylvania, which provides that "each House . . . shall judge of the election and qualifications of its members."

It is true that Judge Kunkel, in Reid's Nomination, 26 Dist. R. 534, 19 Dauphin Co. Reps. 169, where the question turned upon the residence as a qualification for the office of mine inspector, expressed a doubt about our jurisdiction as follows: "It may well be doubted if we have power in this proceeding to pass upon such a question. It is contended, however, that the disqualification of the candidate appears on the face of the petition, and that, therefore, the objection relating thereto falls within sub-division (a), § 8, of the Act of July 12, 1913, P. L. 719. It is obvious that this objection is not covered by sub-division (a). The statute expressly provides that matters of objection made under that sub-division shall be amendable."

We cannot agree with this construction. The statute does not, in our opinion, provide that all matters in sub-division (a) shall be amendable. It provides that the court may, in its discretion, permit amendments if the matters objected to are such as are specified in sub-division (a). If the matters objected to are specified in sub-divisions (b) and (c), there is no provision for amendment, and matters may be specified in sub-division (a) which are amendable and for which amendments should be allowed. We do not construe the section to mean that all matters of objections in sub-division (a) shall be amendable. The question of our jurisdiction depends upon whether sub-division (a) is construed to include only "material error" apparent on the face of the petition, or material error generally; that is to say, whether the words "apparent on the face thereof" qualify "material error," or only qualify "defects." If the only material errors concerning which this court can inquire on objections of this character are such as are "apparent on the face" of the petition, then we have no jurisdiction to pass upon an objection that the residence is not properly stated, because it is obvious that evidence outside of the petition would be necessary to determine that question.

In Morin's Petition, 26 Dist. R. 760, 19 Dauphin Co. Reps. 182, 44 Pa. C. C. Reps. 249, decided two days after Reid's Nomination, 26 Dist. R. 534, 19 Dauphin Co. Reps. 169, this court, in a *per curiam* opinion, said, in reference to sub-division (a): "If this means material error apparent on the face of the petition or accompanying affidavit, we have no power to pass upon the objections, for the reason that the nomination petition on its face does not appear either erroneous or defective. If material error means material error generally, and not error limited to errors apparent on the face of the petition or affidavits, then the proof in support of the objections may be considered. . . . After careful consideration we are inclined to adopt the latter construction."

In Hosenfeld's Nomination, 29 Dist. R. 510, 23 Dauphin Co. Reps. 101, Henry, P. J., specially presiding, said: "Must the 'material error' for which the court can set aside the nominating petition be apparent on the face thereof? The act specifically provides that certain acts shall be done and certain formalities observed before names can be placed upon the official ballot, and section 8, giving the court power to set aside nominating petitions in certain cases, must receive that construction which gives effect to these prerequisite formalities and conditions, and it is hardly to be supposed that in passing upon the validity of these petitions the court should be restricted to such error as might be apparent on their face. The ordinary construction

2 D. & C.

of the words 'apparent on the face' would make them apply to the last antecedent, the word 'defects,' and not to the prior words 'material error.' This clause of the act has been construed by this court in Morin's Nomination, 26 Dist. R. 760, 19 Dauphin Co. Reps. 182, and no reason has been shown, nor do we know of any, why we should depart from the conclusion there reached, which is that the court can set aside the nominating petition for any material error."

We, therefore, are of opinion that material error, as used in this section, means any material error, and that a false or untrue statement as to residence is such an error concerning which we have jurisdiction to inquire.

It is no answer to say that because the Senate is the judge of the qualifications of its members that, therefore, the court cannot determine the eligibility of a candidate on objections to the nominating petitions. The Act of 1913 applies to nominating petitions for all offices. Aside from the Representatives in Congress and in the General Assembly, there is no tribunal to subsequently pass upon the qualifications. The language of the statute must be construed as it applies to all nominations. It is inconceivable that the legislature, in endeavoring to provide for valid elections, should have intended to exclude any inquiry into the eligibility of a candidate on account of his residence, and to have left that to the determination of the courts upon *quo warranto* or other appropriate proceedings after the electorate had gone through the process of an election which might result in having elected no eligible person to fill the office. The 6th section of the Act of 1913 requires each candidate to file with his nomination petition an affidavit "stating his residence, with street and number, if any, and his post-office address, his election district, the name of the office for which he consents to be a candidate, and that he is eligible for such office." If it be said that the requirements as to his residence and post-office address are for identification only, the further requirement that he is eligible for the office can only be for the purpose of showing that candidates who are eligible shall be placed upon the ballots.

Nor do we think that we are required to put one construction upon the statute for members of Congress and members of the General Assembly, because those bodies have the right to determine the qualifications of their members, and another construction upon the statute with reference to offices which have no tribunal for such determination. We think that McNeill's Contested Election, 111 Pa. 235, throws light on this question.

In that case it was contended that the provision of art. II, § 9, of the Constitution, providing that each House shall judge of the election and qualifications of its members, is inconsistent with art. VIII, § 17, which provides for the trial and determination of contested elections and authorizes the General Assembly to designate the courts and judges by whom the several classes of election contests shall be tried and the regular manner of trial and all matters incident thereto. The court said, page 240: "A careful reading of this section 17 shows that its purpose is not to take from each House the power to judge of the election and qualifications of its members given by section 9 cited. Its purpose is merely to provide a method for procuring and presenting to the respective House the evidence and information necessary for an intelligent decision and to secure early action."

So we think the purpose of the Act of 1913 is to provide that persons clearly disqualified shall not be put upon the ballot.

Section 5 of art. II of the Constitution of Pennsylvania provides that Senators and Representatives shall have been "inhabitants of the State four

years, and inhabitants of their respective districts one year next before their election."

In an opinion filed this day, in the matter of the nomination of George S. Graham as a candidate of the Republican Party for the office of Representative in Congress from the Second Congressional District [2 D. & C. 205], we have discussed the principles to be applied to the determination of habitancy. The facts of that case, so far as residence is concerned, are somewhat similar to this. Without repeating what we there said, but applying the principles there enunciated to the facts of this case, we have no difficulty in concluding that Edward G. Roberts was an inhabitant of the Forty-fifth Senatorial District and has not by his temporary residence in the City of Pittsburgh, for the reasons above stated, lost his rights as an inhabitant thereof.

2. It is conceded that there are not sufficient valid signatures of qualified electors on the petitions, Nos. 1, 2 and 3, which contain 207 names, to authorize the placing of the name of the contestee on the ballot, and it is further conceded by the contestant that if petition No. 4 was properly filed there are sufficient signatures. Some evidence is offered from which the court is asked to draw the inference that petition No. 4 was not filed in time in the office of the Secretary of the Commonwealth. But the Deputy Secretary of the Commonwealth and the Chief Clerk and the Chief of the Election Bureau testified that no papers were received after midnight of April 6th, the time when the right to file such papers ceased under the law. A receipt in regular form was produced, and the positive testimony of Dr. Roberts, a brother of the contestee, shows that the paper was in fact filed about 9.30 of the evening of the last day. It is not surprising that confusion and contests such as this should result when the loose practice is indulged in of filing nominating petitions of this character in sections and at different times, and at almost the last minute, with hundreds of other petitions being filed about the same time. To justify a finding that petition No. 4 was not properly filed, we would have to disregard the positive testimony of Dr. Roberts and infer some wrongdoing in the office of the Secretary of the Commonwealth, without any evidence to justify such an inference, and the burden is on the contestant to show that it was not properly filed. We find that petition No. 4 was properly filed and that there are sufficient valid signatures of qualified electors to require the placing of the name of Edward G. Roberts upon the ballot.

3. It is contended that the nominating petitions do not properly describe the office to be filled, because there is no reference to the fact that the election for State Senator in this district is not for the full term, but to fill a vacancy caused by death. We think there is no substance to this contention. The office to be filled is that of State Senator, and when the State Senator is elected, he is elected for whatever term the law provides.

For these reasons the objections to the nominating petitions must be dismissed.

### Order.

And now, to wit, April 22, 1922, the petition of David B. Johns, alleging that the nominating petitions filed in the office of the Secretary of the Commonwealth for the purpose of having the name of Edward G. Roberts placed upon the official primary ballot as a candidate for the office of Senator of the Republican Party from the Forty-fifth Senatorial District are invalid, is hereby dismissed, at the cost of the petitioner. The prothonotary is directed to certify this order to the Secretary of the Commonwealth.

From William Jenkins Wilcox, Harrisburg, Pa.